UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDWARD SMELCER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-11065-LTS |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON
PLAINTIFF'S APPEAL, DEFENDANT'S MOTION TO STRIKE
AND DEFENDANT'S MOTION FOR ORDER
AFFIRMING THE DECISION OF COMMISSIONER

September 28, 2012

SOROKIN, C.M.J.

The Plaintiff, Edward Smelcer, seeks reversal pursuant to 42 U.S.C. § 405(g) of the decision of the Defendant Commissioner of the Social Security Administration denying him disability benefits, or alternatively seeks to remand the case for further findings.[1]  The Commissioner seeks an order affirming his decision.  For the following reasons, the Plaintiff's Motion for Order Reversing the Commissioner's Decision (Docket # 31) is DENIED and the Commissioner's Motion for Order Affirming Decision (Docket # 35) is ALLOWED.  The Commissioner's Motion to Strike (Docket # 37) is ALLOWED.

---

[1]  Although Smelcer has not formally made a motion seeking reversal or remand, the Court so construes his Memorandum of Law (Docket # 31).

1

The Commissioner's Motion to Strike

As a threshold matter, Smelcer's memorandum of law filed in support of his appeal of the Commissioner's determination that he is not disabled includes argument that Smelcer should not be required to return an SSI overpayment for various reasons, and also includes exhibits (offered in support of his motion to reverse) which were not part of the administrative record, and thus were not reviewed by the Commissioner.  See Docket # 31 at 6 ff; Docket #s 31-1, 31-2.

The overpayment issue was not raised in Smelcer's Complaint.  See Docket #1.  The Commissioner has moved to strike the portion of Smelcer's memorandum addressing this issue both as extra-record evidence that may not be considered by this Court and because it contains argument concerning issues over which the Court has no jurisdiction.  Docket #37.

Because the overpayment issue was not raised in the Complaint, the Court need not linger over the jurisdictional question presented.  The overpayment issue presented in Smelcer's brief is simply not before the Court.[2]  Additionally, the Commissioner moves to strike the extra-record evidence submitted by Smelcer concerning the disability determination, as well as argument based upon that extra-record evidence.  Id.; See Docket # 31-1 (a statement of Smelcer's finances); Docket # 31-2 (a June 13, 2011 letter from Dr. McHugh-Modany).  This Court's review of the Commissioner's final decision is limited to the administrative record and the evidence which was before the Commissioner.  Accordingly, the Defendant's Motion to Strike is ALLOWED, and Docket #s 31-1 and 31-2 are STRICKEN and have not been considered by the Court with respect to its review of the disability determination.  Likewise, the Court has not considered the overpayment issue, and the argument concerning that issue is STRICKEN.

---

[2]  Had the issue been raised in the Complaint, then it would then be subject to dismissal on jurisdictional grounds.

I.      PROCEDURAL AND FACTUAL HISTORY

On March 6, 2009, Smelcer applied for Supplemental Security Income Benefits and Disability Insurance Benefits.  <u>Administrative</u> <u>Record</u> (A.R.) at 107-113; 114-115.  Smelcer claimed that he was unable to work because of a disabling condition with an onset date of January 1, 2005. A.R. at 31.   Smelcer's claims were initially denied by the Commissioner on August 21, 2009 (A.R. at 62, 65) and were denied upon reconsideration on December 29, 2009.  A.R. at 60.  On March 4, 2010, Smelcer filed a request for an administrative hearing (A.R. at 76-77) which was held before Administrative Law Judge (ALJ) Constance Carter on December 14, 2010.  A.R. at 81.

Smelcer, represented by counsel, testified at the hearing.  A.R. at 23-55.  Vocational expert Courtney Olds also testified. A.R. at 50-54.  The ALJ issued her decision on January 6, 2011, finding that Smelcer was not disabled within the meaning of the Social Security Act. A.R. at 15.  The Decision Review Board selected the ALJ's decision for review, but notified Smelcer on April 12, 2011 that it had not completed its review within the time allowed, and thus the ALJ's decision became the final decision of the Commissioner.  A.R. at 1-3. Smelcer filed his Complaint seeking review pursuant to 42 U.S.C. § 405(g) on June 15, 2011. Docket # 1.

At the time of the ALJ's decision, Smelcer was thirty-eight years old.  A.R. at 27. Smelcer first received social security benefits in 1991, beginning at the age of 19.  A.R. at 29. He attended special education classes while in school and completed tenth grade, but does not hold a high school diploma or a GED.[3]  A.R. at 132, 305.  Smelcer is divorced and has

---

[3]  Smelcer reported to the Social Security Administration that he had completed the tenth grade. A.R. at 132.  Consulting Psychologist R. Peter Hurd, Ed.D. noted that Smelcer reported dropping out of the ninth grade.  A.R. at 305.

one child. A.R. at 38. He testified that he been experiencing anxiety, panic episodes and agoraphobia since he was seventeen or eighteen years old, but that he did not seek psychiatric treatment for these conditions until 2010. A.R. at 36-37.

In a report dated June 8, 2009, Smelcer's primary care physician Dr. Martha Karchere reported that she had been seeing Smelcer since 1991, when he first reported experiencing anxiety "so severe that he would vomit and find himself unable to continue his activities." A.R. at 303. At that time, Smelcer reported experiencing heart palpitations and feeling faint and nauseated. Id. Because Smelcer repeatedly refused Dr. Karchere's recommendation to seek psychiatric treatment for his anxiety, Dr. Karchere relayed Smelcer's symptoms to a psychiatrist who found his symptoms to be consistent with agoraphobia. A.R. at 37; 303. Dr. Karchere began treating Smelcer with Klonopin, which reportedly controlled Smelcer's physical symptoms "beautifully." Id. Dr. Karchere reported that while medication controlled the physical symptoms of Smelcer's agoraphobia, "his activities continued to be severely circumscribed by anxiety if he went too far from his home and this continues to be the case." A.R. at 303. Dr. Karchere reported that in the past Smelcer has been able to sustain part-time employment for periods of several months at a time, but that he eventually becomes overcome by his anxiety and either quits or is fired. A.R. at 304.

Smelcer first sought psychiatric treatment in March, 2010 at Bayview Associates in Quincy, where he began seeing Dr. Melissa McHugh-Modany every one-to-two weeks for individual therapy. A.R. at 340. He also consulted monthly with Vivian Horton, APRN BC for medication management. Id. At intake, Smelcer was diagnosed with panic disorder and agoraphobia. Id. The intake report also stated that Smelcer suffered from mild symptoms of depression, which had "increased recently due to stressors in [Smelcer's] life." Id. In

addition to instructing Smelcer to continue taking Klonopin as prescribed by Dr. Karchere, Nurse Horton also prescribed Celexa and Paroxetine. Id.

On June 30, 2009, Smelcer met for a consultation with psychologist Dr. Peter Hurd, Ed.D. A.R. at 305. Smelcer reported that he had never been hospitalized for behavioral problems and that his medication was "helpful". A.R. at 305. He stated that he lives in a "safety zone" around his house and has a friend who drives him to pick up his daughter. A.R. at 306. Smelcer reported that he is unemployed and spends his days performing household chores and chatting with friends on the internet. Id. Dr. Hurd stated in his report that Smelcer's "thought process appears organized" and that in his opinion, Smelcer "has the ability to manage his finances responsibly." A.R. at 307.

In addition to Smelcer's psychiatric conditions, he is also obese and has a history of cardiac disease and coronary Artery disease. A.R. at 254. In October of 2007, Smelcer suffered from a myocardial infarction that required angioplasty and placement of multiple stents. A.R. at 169-70. Smelcer has responded well to cardiac rehabilitation and his heart conditions have resolved. 164-66. He has returned to exercising regularly and testified that his only exertional limitations are related to his anxiety. A.R. at 48-49; 169-70.

Smelcer's longest period of work was from 2000 to 2004, when he worked approximately twenty hours per week as a front-end supervisor of cashiers at Ocean State Job Lot. A.R. at 31-33. He stated that he was able to maintain his employment despite suffering from anxiety and a panic disorder because he had a series of understanding managers who would allow him to leave work suddenly when he experienced symptoms. A.R. at 32. Eventually, new managers were hired who were reportedly less tolerant of Smelcer's frequent absences. Id. Smelcer was written up numerous times for calling in sick and for leaving during his shifts

and was eventually let go in December 2004. A.R. at 32-33. Smelcer last worked for a period of about four months in 2008 as a part-time tenant coordinator at his public housing complex. A.R. at 305. Smelcer's responsibilities consisted mostly of opening doors for contractors who needed access to the building to do work. A.R. at 43. He stated that he was able to perform this job because he was close to his home and within in his "comfort zone." A.R. at 44.

Smelcer is divorced and has a daughter whom he sees on weekends and who stays with him during school vacations and summers. A.R. at 305; 38-39. At the hearing, he reported attending family dinners, routinely going shopping and to the movies with friends, driving to the supermarket and cooking and cleaning for himself. A.R. at 39-40. According to Dr. Hurd's report, Smelcer also goes to the gym twice a week and is a member of the residence council for his public housing complex, for which he attends meetings. A.R. at 306. Smelcer also reported taking a vacation to Cape Cod in 2008. A.R. at 41. He stated that he does not drive by himself and that he is "not good in a crowd." A.R. at 45, 47.

On August 6, 2009, Dr. Mary Ford Clark completed a psychiatric review technique form for Disability Determination Services. A.R. at 308. Dr. Clark found Smelcer's anxiety-related disorders to be "non-severe" within the meaning of the Social Security Administration's regulations. Id.

The Administrative Decision

In assessing Smelcer's request for disability benefits, the ALJ conducted the five-step sequential evaluation process that determines whether an individual is disabled and thus entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920; Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6-7 (1st Cir.1982); A.R. 8-9.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(1). The ALJ found that Smelcer had not engaged in substantial gainful activity since January, 2005, the alleged onset date of his disability. A.R. at 9.

Second, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c) and 416.920 (c). An impairment is severe if it "significantly limits [claimant's] physical or mental capacity to perform basic work-related functions. Goodermote, 690 F.2d at 6. The ALJ determined that Smelcer does have severe impairments, consisting of generalized anxiety disorder, panic disorder and agoraphobia that "significantly limit his ability to do basic work-related activities." A.R. at 10.

At the third step, the ALJ must determine whether the claimant has impairments that meet or are medically equal to one of the listed impairments in Appendix 1 of Subpart P of the Social Security Regulations. The ALJ found that Smelcer's impairments did not meet or equal the criteria of Section 12.06 (Anxiety-Related Disorders) of the Social Security Regulations because Smelcer's conditions did not meet the requisite "Paragraph B" criteria. A.R. at 11. The ALJ stated that "Paragraph B" requires that claimant demonstrate that he suffers from at least two "marked limitations" from a list of restrictions in daily living. Id. The ALJ found that Smelcer suffered from only "mild restrictions in activities of daily living" and "moderate difficulties in maintaining concentration." Id. The ALJ determined that these were not "marked limitations" based upon Smelcer's "reported ability to cook, clean, shop, and care for his daughter for extended time periods." Id. The ALJ found that Smelcer's ability to concentrate was only mildly affected based on Smelcer's claims that he is able to pay attention "all day" and that he does not have any problems following written and spoken instructions. A.R. at 141. The

7

ALJ further found that that Smelcer failed to show that his anxiety "renders him completely unable to function outside of his home" based on his testimony that he "remains able to go to restaurants, the mall, and the movies, as well as take vacations." A.R. at 11.

At the fourth step, the ALJ must consider the claimant's past relevant work and Residual Functional Capacity (RFC). 20 C.F.R. § 404.1520(a)(4)(iv). Whenever there is a determination that the claimant has a significant impairment, but not an "Appendix 1 impairment," the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis, despite limitations from his impairments. Id. § 404.1545. After considering the entire record, the ALJ determined that Smelcer "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: his work must involve only simple routine tasks; and his work must require only occasional decision-making, occasional changes in the work setting, and occasional interaction with the public." A.R. at 12.

In making her findings, the ALJ considered all of the objective medical evidence regarding Smelcer's conditions, including the opinion of Dr. Karchere, and she compared this evidence with Smelcer's own statements regarding his health and his inability to work. A.R. at 12. After considering the evidence, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with [Smelcer's] residual functional capacity assessment." A.R. at 13. The ALJ based this determination upon Smelcer's inability to identify anything in particular about working (or the work setting) that triggers his anxiety or panic attacks and upon the fact that Smelcer had been able to work for four years in a

supervisory role and for approximately four months as a tenant coordinator in 2008, despite his anxiety and agoraphobia. A.R. at 12-13. The ALJ further stated that "the claimant's brief and limited mental health treatment history further undermines the alleged severity of his mental impairments." Id. Based on the discrepancy between Dr. Karchere's assessment that Smelcer continues to suffer from disabling agoraphobia and evidence regarding Smelcer's ability to work, socialize and function outside of his home, the ALJ declined to give controlling weight to Dr. Karchere's opinion. A.R. at 13. The ALJ found that Dr. Karchere's opinion that Smelcer continues to suffer from disabling agoraphobia was inconsistent with her statement that Klonopin "beautifully" controls the physical symptoms of Smelcer's anxiety and agoraphobia. A.R. at 14. The ALJ also found Dr. Karchere's opinion to be inconsistent with Dr. Clark's determination that Smelcer's anxiety-related disorders were "non-severe." A.R. at 308.

At the fifth step, the ALJ asks whether Smelcer's impairments prevent him performing other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ determined that Smelcer was unable to perform his past work because it required more than occasional decision-making, but that based upon his RFC and the testimony of vocational expert Courtney Olds, Smelcer could perform many jobs that exist in the national economy, including warehouse selector, laundry worker and cleaner. A.R. at 14-15.

II. DISCUSSION

Standard of Review

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal

standard. Id. Likewise, where the Commissioner's finding is not supported by substantial evidence, or is the result of an error of law in the evaluation of the claim, the Court will not uphold the Commissioner's decision. Id. Substantial evidence supporting the Commissioner's decision exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Although the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings when they are supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991). Indeed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) (internal quotations omitted).

Smelcer argues that the ALJ improperly determined that Smelcer was not disabled by (1) using Smelcer's work history as evidence that he did not have a disability, (2) failing to give controlling weight to the medical opinion of Smelcer's primary care physician, Dr. Karchere, and (3) improperly concluding that Smelcer had the RFC to perform many jobs existing in the national economy. Docket No. 31 at 2-5.

The ALJ's Consideration of Smelcer's Work History

Smelcer asserts that the ALJ improperly considered his work history in determining that Smelcer retained the RFC to work. Docket No. 31 at 3. Smelcer argues that the ALJ improperly failed to consider the special circumstances of his prior employment, including the fact that he worked only part-time and frequently needed to leave because of anxiety attacks. Id. Smelcer

claims that he was only able to maintain his prior jobs because of particularly lenient managers, and thus would not be able to work again in the same capacity. Docket # 31 at 3.

In making a finding of RFC, an ALJ must consider all of a claimant's symptoms to the extent that they are consistent with objective medical evidence and other evidence. 20 CFR § 404.1529. The ALJ must evaluate all "other evidence" in the record, including "information about [claimant's] prior work record." Id.

The ALJ considered the fact that Smelcer had been able to work -- albeit in a limited capacity -- in combination with other substantial evidence of Smelcer's ability to function, finding that Smelcer's "alleged limitations stemming from his anxiety disorder, panic disorder, and agoraphobia are not fully credible in light of his substantial social capabilities." A.R. at 13. Among the other evidence that the ALJ considered were statements made by Smelcer concerning his symptoms, evidence of Smelcer's social capabilities, and evidence of Smelcer's "brief and limited mental health treatment history." A.R. at 12-13. Among Smelcer's social capabilities were the ability to go shopping with friends regularly, to go to the gym twice a week, to care for his daughter, to take a vacation to Cape Cod and to serve as a council member for his public housing complex. Id. The ALJ further relied on Smelcer's own representations that he is able to pay attention "all day" and follow written and spoken instructions to support the conclusion that Smelcer is capable of performing work at all exertional levels, subject to the limitations that his work only require the performance of routine tasks and is limited to occasional decision-making, changes in work setting and interaction with the public.

In making the determination that Smelcer retained the RFC to perform "a full range of work at all exertional levels" with specified restrictions, the ALJ properly relied on all of the

medical and non-medical evidence in the case record as required by 20 CFR § 404.1529. The ALJ was permitted to consider Smelcer's work history in determining his RFC.

### Weight Given To Treating Physician's Medical Opinion

Smelcer asserts that the ALJ erred by failing to give controlling weight to the medical opinion of Smelcer's treating primary care physician, Dr. Martha Karchere, who stated that Smelcer's activities "continued to be severely circumscribed by anxiety." A.R. at 303. Smelcer alleges that the ALJ improperly determined that Dr. Karchere's opinion was not credible because it was contradicted by other evidence in the record. Docket # 31 at 4. Smelcer argues that the ALJ was required to support her decision to decline to give controlling weight to Dr. Karchere's opinion by providing a clear and convincing explanation of the reasons, and that the ALJ failed to do so. Docket # 31 at 4 (citing Beckstrom v. Astrue, 2011 U.S. Dist. LEXIS 38224 (D. Ariz. 2011)). Smelcer further urges that the opinion of Dr. Karchere should be given deference because of the subjective nature of Smelcer's conditions and the fact that anxiety is "virtually impossible to prove physically." Id.

Smelcer does not cite (and the Court has not located) any First Circuit case applying the "clear and convincing" standard urged by him. Rather, an ALJ should give controlling weight to a treating doctor's opinion if that opinion "is well-supported and not inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996); see also Falcon-Cartagena v. Comm'r of Soc. Sec., 21 F. App'x 11, 12-13 (1st Cir. 2001) (finding claimant's treating psychiatrist's opinion that claimant's depression was "completely disabling" not entitled to controlling weight when contradicted by other evidence in the record).

In determining whether a treating physician's opinion should be given controlling weight, an ALJ considers whether the opinion is consistent with "medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." C.F.R. § 404.1527 (c)(2). If an ALJ determines that the treating physician's opinion is not entitled to controlling weight, the ALJ will give "good reasons" supporting her decision. Id. Among such reasons, an ALJ may cite inconsistency with the record. See C.F.R. § 404.1527 (c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). While a well-supported treating source's medical opinion need not be supported directly by the entirety of the evidence, there must be "no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3.

The ALJ declined to give controlling weight to the opinion of Dr. Karchere based upon her determination that her opinion was inconsistent with other substantial evidence in the record, including evidence of Smelcer's actual activities outside of his home and Dr. Karchere's own statements that medication controlled the symptoms of Smelcer's anxiety and agoraphobia "beautifully." A.R. at 303. The ALJ stated,

> Dr. Karchere's opinion that the claimant suffers from disabling agoraphobia neglects to account for the substantial evidence that the claimant remains able to function at a relatively high level outside of his home (Ex. 7F). Specifically, her opinion is inconsistent with the claimant's continuing ability to shop, dine out at restaurants, vacation away from home, work out at a gym, see movies in theaters, and participate in his housing complex's residents' council. Moreover, Dr. Karchere acknowledges that the claimant's prescription for Klonopin "beautifully" controls his physical anxiety symptoms (Ex. 7F). According to Dr. Karchere, the claimant no longer suffers from nausea, heart palpitations, or feelings of faintness (Ex. 7F).

A.R. at 13-14.

Taking into account all of the evidence in the record, the ALJ properly determined that Dr. Karchere's opinion was not entitled to controlling weight because it was inconsistent with the weight of other evidence before her. Id. The ALJ offered "good

reasons" as required by C.F.R. § 404.1527 (c)(2) for declining to give controlling weight to Dr Karchere's opinion and supportably found that Dr. Karchere's opinion was not entitled to controlling weight because it was inconsistent with "substantial evidence in the case record." A.R. at 13 (citing SSR 96-2p)..

Reliance Upon the Vocational Expert's Testimony

Smelcer contends that the ALJ erred by relying upon the determination of vocational expert Courtney Olds that significant jobs exist in the national economy that would accommodate Smelcer's need for extreme flexibility in his employment, including his need to call in sick without notice. Docket # 31 at 5. Smelcer claims that the ALJ's finding that Smelcer's RFC included the jobs of warehouse selector, cleaner and laundry worker were "unsupported by evidence, and solely based on non medical opinion, unrelated to Smelcer's disability." Id.

Where a claimant's ability to perform work at all exertion levels has been compromised by nonexertional limitations, it is appropriate for an ALJ to demonstrate the availability of jobs in the national economy by seeking the opinion of a vocational expert. Ortiz v. Sec'y of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). A vocational expert's determination that a claimant can perform substantial jobs existing in the economy constitutes substantial evidence if it is based on an ALJ's hypothetical which utilizes accurate medical evidence. Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994). As stated above, the ALJ's determination that Smelcer had the RFC to perform a full range of work at all exertional levels with specified restrictions was supported by substantial evidence.

Here, the ALJ determined that Smelcer's ability to perform work had been compromised by nonexertional limitations. A.R. at 15. Based upon this determination, the ALJ enlisted a

vocational expert to determine whether jobs existed in the national economy that Smelcer was capable of performing. A.R. at 15.  Based on the testimony of Ms. Olds and the substantial evidence in the record, the ALJ determined that "considering the claimant's age, education, work experience and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

While Smelcer claims that the vocational expert failed to consider the particular limitations of his alleged disabilities, this Court concludes that because the ALJ's determination was based on Smelcer's RFC, which was determined using substantial evidence in the record evidencing Smelcer's capabilities, the opinion of the vocational expert constitutes substantial evidence of the ALJ's decision.

### III.     CONCLUSION

For the foregoing reasons, the Commissioner's Motion to Strike (Docket # 37) and Motion for Order Affirming Decision of Commissioner (Docket # 35) are ALLOWED.  The Plaintiff's Motion for Reversal or Remand (Docket # 31) is DENIED.

                                      SO ORDERED.

                                      / s / Leo T. Sorokin
                                      Leo T. Sorokin
                                      Chief United States Magistrate Judge